**Peter E. Heuser, OSB #811281**
Email pheuser@schwabe.com
**Matthew R. Wilmot, OSB #061936**
Email mwilmot@schwabe.com
**Abra T. Cooper, OSB # 086179**
Email acooper@schwabe.com
Schwabe, Williamson & Wyatt, P.C.
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981
Fax 503.796.2900

Of Attorneys for Defendant Coast Cutlery Co.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **LEATHERMAN TOOL GROUP, INC.,** an Oregon corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**COAST CUTLERY CO.,** an Oregon corporation,<br><br>Defendant. | No. CV11-615 HZ<br><br>**DEFENDANT COAST CUTLERY CO.'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**<br><br>**(ORAL ARGUMENT REQUESTED)** |

Defendant Coast Cutlery Co. ("Coast") submits this memorandum in support of its motion for partial summary judgment.

Page 1 -   DEFENDANT COAST CUTLERY CO.'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

PDX/122348/182253/ATC/9012729.1

## I.      INTRODUCTION

Pursuant to Fed. R. Civ. P. 56(c), Coast moves this Court for partial summary judgment against Plaintiff Leatherman Tool Group, Inc. ("Leatherman"), asking for rulings that: (1) Coast did not falsely advertise any of its products as being constructed of 440C stainless steel and having a hardness of between 57 and 59 on the Rockwell C Hardness ("HRC") scale prior to March of 2008; (2) Coast did not falsely advertise any of its products other than its fish filet knife as being constructed of 440C stainless steel and having an HRC hardness value of between 57 and 59 prior to December of 2010; (3) Coast's alleged false advertising was not willful prior to February of 2010; and (4) because there is no evidence of willfulness prior to February of 2010, Leatherman cannot recovery Coast's profits earned prior to that date.  Specifically, there is no evidence that any Coast products sold prior to March of 2008 that were represented as being constructed of 440C stainless steel and having an HRC hardness between 57 and 59 did not in fact have those qualities.  With the exception of a single fish filet knife from Coast's 2008 product line, there is no evidence that other products sold prior to December of 2010 were falsely advertised as being constructed of 440C and/or having a hardness of 57-59 HRC.  As to the issue of Coast's alleged willfulness, there is no evidence that Coast knew or had any reason to know prior to February of 2010 that any of the products it advertised as being constructed of 440C stainless steel were actually constructed of another grade of steel.  It similarly had no knowledge that the blades in its knives and multi-tools allegedly did not have the represented hardness.

Without conceding that Leatherman is, in fact, entitled to any monetary relief in this case, this lack of evidence severely limits the relief Leatherman may recover.  Because Leatherman cannot present any evidence that Coast falsely advertised products prior to March of 2008, it cannot prove that Coast violated the Lanham Act prior to that time.  Moreover, because Leatherman's only evidence of falsity prior to December of 2010 is tied to a single Coast knife, Leatherman is unable to prove Coast violated the Lanham Act with respect to its advertising of any other product manufactured prior to December of 2010.  Therefore, as a matter of law, Leatherman is not entitled to damages or Coast's profits for 2007, 2008 (with the exception of

Page 2 -   DEFENDANT COAST CUTLERY CO.'S MEMORANDUM IN
            SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

PDX/122348/182253/ATC/9012729.1

those stemming from the sale of the fish filet knife), 2009, and January - November of 2010.

Leatherman's inability to present evidence of Coast's willfulness prior to February of 2010 similarly limits its potential recovery. As discussed in more detail below, the Ninth Circuit only awards the defendant's profits as damages where the plaintiff has shown that the defendant's actions were willful. Because Leatherman cannot present any evidence that Coast knew or had reason to know that certain of its products may not have been constructed of 440C stainless steel and/or may not have had a hardness of between 57 and 59 HRC until February of 2010 at the earliest, it is not entitled, as a matter of law, to Coast's profits earned prior to that date.

## II.  STATEMENT OF FACTS

Coast is a family-owned business, founded in the Portland area in 1919. Declaration of David Brands ("Brands Decl."), ¶ 2. Today, Coast imports, markets, sells and distributes flashlights, lanterns, headlamps, knives and multi-tools in the United States and in approximately 30 foreign countries. *Id.*

Coast does not manufacture its knife and multi-tool products. Declaration of Abra Cooper ("Cooper Decl."), Ex. A, Deposition of David Brands, 50:6-11, August 10, 2011 (hereinafter referred to as "Brands Dep."). Instead, the products are manufactured overseas, using materials acquired from overseas sources. Brands Decl., ¶ 3. Since the late 1990s, Coast has relied almost exclusively on the services of a trading company in Asia – first named Eagle Products, then Coast/Eagle, and now Coast Success Ltd. ("CSL") – to procure knives and multi-tools from factories based in Asia. Brands Dep., 54:8-12; Brands Decl., ¶ 3. No single factory is responsible for the production of all of Coast's knife and multi-tool products. Brands Dep., 54:24-55:3. Coast's decision to do business with CSL was partly based on CSL's ability to procure 440C stainless steel for use in Coast's knife blades, ensure blade hardness levels of between 57 and 59 HRC, and to individually test the blade hardness of each knife. Brands Decl., ¶ 4. As part of developing new product designs, CSL would deliver product samples to Coast,

Page 3 -   DEFENDANT COAST CUTLERY CO.'S MEMORANDUM IN
SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

PDX/122348/182253/ATC/9012729.1

and Coast would then select those products it wished to purchase. Brands Dep., 53:11-21. For those products selected by Coast, CSL would then put Coast's name on the product, and package the product in Coast's product packaging. Brands Decl., ¶ 3. Coast at all times relied entirely on CSL to ensure that its products were manufactured pursuant to its desires. *See* Brands Dep., 73:20-22; 245:24-246:3.

Like Coast, Leatherman is an Oregon-based business and has for some time competed with Coast (among other companies) in the knife and multi-tool market. Brands Dep., 16:4-13. Recently, Leatherman also entered the light and flashlight business, having purchased a majority interest in Zweibrüder Optoelectronics GmbH & Co. KG, a German company that sells LED Lenser brand lights, headlamps, lanterns and flashlights. Cooper Decl., Ex. B, Deposition of Ben Rivera, 57:16-18, August 4, 2011 (hereinafter referred to as "Rivera Dep."). Until Leatherman's purchase of Zweibrüder, Coast had served as Zweibrüder's exclusive distributor in the United States and had been chiefly responsible for introducing and marketing Zweibrüder's products to retailers and wholesalers in the United States from 2001 through May 31, 2011. Brands Decl., ¶ 5 . Rainer Opolka is the former majority owner of Zweibrüder. Mr. Opolka's relationship with Coast, and especially its president, David Brands, can be best described as tumultuous and had been so for many years. *See, e.g.*, Cooper Decl., Ex. C, Deposition of Rainer Opolka, 31:14-32:3, February 7, 2012 (hereinafter referred to as "Opolka Dep."); Cooper Decl., Ex. D, Deposition of Greg Windom, 31:16-32:2, February 3, 2011 (hereinafter referred to as "Windom Dep."); Brands Decl., ¶ 5.

In March or April of 2008, Mr. Opolka called Leatherman employee Ben Rivera and told him of his suspicions that Coast's products were not made from 440C stainless steel. Opolka Dep., 8:9-20; 11:9-11. While the basis for Mr. Opolka's suspicions is unclear, he asked Mr. Rivera to purchase some Coast products and send them to him for testing. Opolka Dep., 7:20-24; 9:18-21. Mr. Rivera sent Mr. Opolka two fish filet knives from Coast's 2008 product line, which Coast advertised as being constructed of 440C stainless steel. Opolka Dep., 10:1-13. In

Page 4 -    DEFENDANT COAST CUTLERY CO.'S MEMORANDUM IN
SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

PDX/122348/182253/ATC/9012729.1

March or April of 2008, Mr. Opolka performed a hardness test on one of the knives he received from Mr. Rivera. Opolka Dep., 12:12-14. Mr. Opolka's test indicated that the knife had a hardness of between 50 and 52 HRC. Opolka Dep., 12:3-13:13. Based on the results of the hardness test, Mr. Opolka concluded that the knife was likely not constructed of 440C stainless steel. Opolka Dep., 13:14-21. However, because Mr. Opolka did not test the steel composition of the blade, he could not be sure his conclusion was accurate. Opolka Dep., 13:22-14:8. Even though Mr. Opolka and Zweibrüder had a long-standing business relationship with Coast, Mr. Opolka did not at that time tell anyone at Coast that: (1) he had doubts that Coast's products were constructed of 440C stainless steel; (2) he tested the hardness of the fish filet knife; or (3) he believed, based on the hardness test results, that the fish filet knife might not have been constructed of 440C stainless steel. *See* Opolka Dep., 31:14-32:6; Brands Decl., ¶ 5. In addition, Mr. Opolka did not report his hardness test results to Leatherman. Opolka Dep., 15:7-23. While both Mr. Rivera and Jake Nichol, Leatherman's CEO, were aware of Mr. Opolka's suspicions, Leatherman did not test any of Coast's products itself. *See* Rivera Dep., 50:11-51:10; Cooper Decl., Ex. E, Deposition of Jake Nichol, 87:10-88:2; 88:16-18, February 6, 2012 (hereinafter referred to as "Nichol Dep."). In addition, no one from Leatherman followed up with Mr. Opolka to inquire about the results of his testing of the Coast fish filet knives. *See* Rivera Dep., 52:25-53:3; Opolka Dep., 18:22-19:6.

Two years passed before Mr. Opolka raised his "doubts" as to the composition of the steel used in Coast's products to anyone at Coast. In February of 2010, Zweibrüder held a conference in Koh Tao, Thailand for the "master distributors" of its products. Declaration of Greg Windom ("Windom Decl."), ¶ 2. At the time of the conference, due to friction between Mr. Opolka and Mr. Brands, the relationship between their companies had become strained. Windom Dep., 31:16-32:2. As a result, Mr. Brands no longer attended these conferences, though other Coast employees did. *See* Opolka Dep., 22:3-22:22. Greg Windom, Coast's General Manager, attended the 2010 conference on Coast's behalf. Windom Decl., ¶ 2. During the

Page 5 -   DEFENDANT COAST CUTLERY CO.'S MEMORANDUM IN
SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

PDX/122348/182253/ATC/9012729.1

conference, Mr. Opolka approached Mr. Windom to rail against Mr. Brands and to complain about Coast. *See* Windom Dep., 33:2-6. Among other accusations leveled against Coast during Mr. Opolka's tirade, Mr. Opolka told Mr. Windom that he did not believe that the blades in Coast's products were constructed of 440C stainless steel. Windom Dep., 32:15-17; Opolka Dep., 22:18-23:13. Mr. Opolka does not recall whether he told Mr. Windom that he tested the HRC hardness of the fish filet knife. Opolka Dep., 24:10-18. Given the nature of Mr. Opolka's tirade, Mr. Windom did not tell Mr. Brands or anyone else at Coast about Mr. Opolka's accusations. Windom Dep., 32:25-33:22.

It was not until late 2010 that anyone at Coast other than Mr. Windom had any reason to think that Coast's products could be constructed of anything other than 440C stainless steel. In mid-2010, Mr. Brands became concerned that the knife and multi-tool products provided by CSL no longer met Coast's required quality levels, although these quality concerns had nothing to do with steel quality or blade hardness. Brands Decl., ¶ 6. In order to address this concern, in October of 2010, Coast hired Doug Hutchens, who was experienced in the design and fabrication of knives, to review, upgrade and improve Coast's knife and multi-tool production program. Brands Decl., ¶ 6.

In early to mid-December of 2010, Mr. Hutchens visited some of CSL's primary knife and multi-tool factories to learn about the facilities and to meet those who operated them. Cooper Decl., Ex. F, Deposition of Doug Hutchens, 39:12-40:9; 70:24-71:4, February 2, 2012 (hereinafter referred to as "Hutchens Dep."). During this visit, a CSL employee bashfully admitted to Mr. Hutchens that the knives and multi-tools were being fabricated of 420 and not 440C stainless steel. Hutchens Dep., 89:2-9. Mr. Hutchens was surprised by this revelation. Hutchens Dep., 76:7-20; 79:15-17. Upon returning to Portland, Mr. Hutchens informed Mr. Brands of what he had been told about the type of steel the factories he visited were using. Hutchens Dep., 116:3-6; Brands Dep., 195:16-196:2. Shortly thereafter Mr. Brands began to design new packaging that removed references to 440C. Brands Decl., ¶ 6; Brands Dep., 141:4-

Page 6 -   DEFENDANT COAST CUTLERY CO.'S MEMORANDUM IN
           SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

PDX/122348/182253/ATC/9012729.1

11.

Around that same time period, Mr. Opolka and Leatherman finalized the agreement by which Leatherman would become the majority shareholder of Zweibrüder. *See* Opolka Dep., 19:14-19-20:4. In December of 2010, after terminating Zweibrüder's exclusive distributor contract with Coast, Mr. Opolka reminded Mr. Rivera about his suspicions regarding Coast's products and he encouraged Leatherman to test the steel in Coast's knives. Opolka Dep., 19:7-19; Rivera Dep., 53:15-54:4.

Finally, as by Mr. Opolka, Leatherman purchased and sent a selection of Coast knives and multi-tools to IMR Laboratories in Portland, and asked that IMR test the chemical composition of the steel of the blades as well as their hardness on the HRC scale. Rivera Dep., 55:2-13. With the exception of the 2008 fish filet knife, all of the knives and multi-tools purchased by Leatherman and subsequently tested were offered for sale in late December of 2010 or January of 2011.[1] *See* Rivera Dep., 55:2-55:9; Cooper Decl., Ex. I. There is no evidence that Leatherman purchased or tested any other knives or multi-tools offered for sale in 2007, 2008, 2009, or prior to December of 2010.

Approximately five months after receiving the test results, without even alerting Coast to the fact that its knives and multi-tools were being mis-labled, Leatherman filed this action.

## III.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the record establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party is entitled to summary judgment when the nonmoving party cannot present specific facts showing a genuine issue exists for trial. *T.W. Electrical Service, Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987). While the moving party bears the initial burden of establishing the absence of a genuine issue of material

---

[1] The list of Coast products Leatherman had tested is set forth in Exhibit 2 to the Declaration of Alexis Puerta and in LTG001278. These documents are attached as Exhibits G and H, respectively, to the Declaration of Abra Cooper.

Page 7 -   DEFENDANT COAST CUTLERY CO.'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

PDX/122348/182253/ATC/9012729.1

fact, that burden may be satisfied by showing that there is an absence of evidence to support the non-moving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). Once the moving party has met its initial burden, the non-moving party must go beyond the pleadings, and identify facts that show a genuine issue for trial. *Id.*; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden of demonstrating the existence of a genuine issue, however, is not met by "metaphysical doubt" or "unsubstantiated assertions." *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge Corp.*, 865 F.2d 1539, 1542 (9th Cir. 1989). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Guidroz-Brault v. Mo. Pac. R.R. Co.*, 254 F.3d 825, 829 (9th Cir. 2001), *quoting Anderson*, 477 U.S. at 248.

## IV. LEGAL ARGUMENT

In alleging Coast willfully and falsely advertised some of its knives and multi-tools as being constructed of 440C stainless steel and having an HRC between 57 and 59 as far back as 2007, Leatherman is attempting to stretch the evidence in this case to support conclusions that it simply cannot prove. With the single exception of Coast's 2008 fish filet knife, there is no evidence that Coast falsely advertised any of its products prior to December of 2010. Without this evidence of falsity, Leatherman cannot prove that Coast's advertising constitutes a violation of the Lanham Act. Furthermore, there is no evidence that Coast had any knowledge whatsoever that its products were allegedly constructed of anything other than 440C stainless steel or did not have a hardness of 57 to 59 HRC until, at the earliest, February of 2010. Because there is no evidence that any violation of the Lanham Act prior to that date was willful, Leatherman, as a matter of law, is not entitled to recover any of Coast's profits prior to February of 2010.

Page 8 -   DEFENDANT COAST CUTLERY CO.'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

PDX/122348/182253/ATC/9012729.1

### A. There is no evidence that Coast's advertising of its products as being constructed of 440C stainless steel and having an HRC between 57 and 59 was false prior to March of 2008.

Leatherman cannot point to any evidence that would establish that Coast's products were not fabricated of 440C stainless steel and/or did not have an HRC between 57 and 59 prior to December of 2010, with the single exception of the fish filet knife Mr. Rivera sent Mr. Opolka in March of 2008. Therefore, as a matter of law, Coast is entitled to summary judgment on Leatherman's claim that Coast's advertisement of its products as being constructed of 440C stainless steel and having an HRC of 57-59 prior to March of 2008 was false.

To establish a false advertising claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), the plaintiff must prove that: (1) the defendant made a false statement of fact in a commercial advertisement about its own or another's product; (2) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (3) the deception was material, in that it was likely to influence the consumer's purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. 15 U.S.C. § 1125(a); *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1996). A plaintiff may prove falsity within the meaning of the Lanham Act in one of two ways. First, it may show that the statement was literally false, either on its face or by necessary implication. *Id*. Second, the plaintiff can prove falsity by showing that the statement was literally true but likely to mislead or confuse consumers. *Id*. Whether an advertisement is false is an issue of fact. *Campagnolo S.R.L. v. Full Speed Ahead, Inc.*, 2010 U.S. Dist. LEXIS 46176, *18 (W.D. Wash. May 11, 2010). Simply because a plaintiff presents evidence tending to show falsity with respect to a single statement does not shift or any way lessen plaintiff's burden to prove falsity with respect to any other statement it alleges is inaccurate. Proving falsity may alleviate the plaintiff's burden of proof with respect to other elements of its Lanham Act claim with regard to that same statement, *see, e.g.*, *Campagnolo S.R.L.*, 2010 U.S. Dist. LEXIS 46176, at *24 (stating that when

Page 9 -   DEFENDANT COAST CUTLERY CO.'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

PDX/122348/182253/ATC/9012729.1

an advertisement is literally or facially false, consumer deception may be presumed), but it does not relieve the plaintiff's initial burden of proving falsity in the first place.

Courts routinely grant summary judgment in false advertising cases under the Lanham Act where the plaintiff fails to submit evidence of falsity. *Sally Beauty Co., Inc. v. Marianna Imports, Inc.*, 304 F.3d 964, 980-81 (10th Cir. 2002)(granting summary judgment in favor of defendant where plaintiffs failed to demonstrate a genuine issue of material fact as to whether defendant's statement that its products contained a generic version of plaintiffs' product was literally false or misleading); *Cairns v. Franklin Mint Co.*, 107 F.Supp.2d 1212, 1223 (C.D. Cal. 2000)(granting defendant's motion for summary judgment on Plaintiff's Lanham Act claim where there was no evidence that defendant's statement that 100% of the purchase price of its product would be donated to charity was false).

Here, Leatherman cannot point to any evidence that Coast's knives and multi-tools sold prior to March of 2008 were fabricated of anything other than 440C stainless steel or that they did not have a hardness of 57-59 HRC. Leatherman has not tested any products advertised by Coast as having blades constructed of 440C stainless steel or a hardness of 57-59 HRC from any of Coast's product lines other than the single 2008 fish filet knife and other products being sold as of January of 2011. There is no evidence of falsity as to 2007, as to other 2008 products, as to any 2009 products, or as to any 2010 products prior to December of that year.

Furthermore, simply because there is evidence allegedly indicating that certain advertising in 2008 and in December of 2010 may have been false does not and cannot imply the falsity of advertising for products that were not tested and for which there is no other evidence of falsity (namely, all those products in Coast's 2007 and 2009 product lines, as well as the vast majority of those in Coast's 2008 line). Even if the Lanham Act did not require that Leatherman prove each and every violation of the Act it alleges, mere speculation that additional products may have been falsely advertised because there is allegedly evidence that some were is not enough to prevent summary judgment in Coast's favor. In determining whether summary

Page 10 - DEFENDANT COAST CUTLERY CO.'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

PDX/122348/182253/ATC/9012729.1

judgment is appropriate, the court need not draw all inferences in favor of the plaintiff, but rather only those inferences which are reasonable. *Ackerman v. Western Elec. Co.*, 860 F.2d 1514, 1520 (9th Cir. 1988). Inferences based on conjecture and speculation are insufficient to create an issue of material fact. *Id.*; *O.S.C. Corp. v. Apple Computer, Inc.*, 792 F.2d 1464, 1466-67 (9th Cir. 1986); *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 686 (9th Cir. 1985).

A plaintiff cannot recover under the Lanham Act for alleged false advertising that it cannot prove. *Skydive Arizona, Inc. v. Quattrochi*, 704 F.Supp.2d 841, 855 (D. Ariz. 2010). *Skydive Arizona* is illustrative. In that case, the court granted summary judgment in favor of the plaintiff on its false advertising claims based on defendants' use of certain websites. *Id.* at 855-56. However, plaintiff argued that because the defendants engaged in conduct nearly identical to the conduct that resulted in finding defendants liable for false advertising, plaintiff was entitled to an additional award of profits for those alleged similar Lanham Act violations. *Id.* at 856. The court disagreed, stating that plaintiff had only proven Lanham Act violations as to certain of the websites, and that "it would be entirely improper to deprive Defendants of profits earned for conduct that has not been proven to violate the Lanham Act." *Id.* at 856. Like the plaintiff in *Skydive Arizona*, Leatherman is not entitled to damages or Coast's profits with respect to those products for which it cannot show falsity.

Leatherman has no evidence – with the exception of the test results for the fish filet knife – that Coast falsely advertised any of its products prior to December of 2010. Leatherman is therefore not entitled to any monetary recovery stemming from the sale of Coast's products sold prior to December of 2010, with the single exception of the fish filet knife.

**B.    There is no evidence that Coast's alleged false advertising was willful prior to February of 2010.**

There is no evidence that Coast had any knowledge that the steel used in its knives and multi-tools was anything other than 440C prior to February of 2010.[2] This is also no evidence

---

[2] To be clear, Coast does not concede that its alleged false advertising after February of 2010 was willful at any point in time. The only position Coast takes with respect to its alleged willfulness is that because it did not know or have reason to know that its blades were

Page 11 -    DEFENDANT COAST CUTLERY CO.'S MEMORANDUM IN
            SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

PDX/122348/182253/ATC/9012729.1

that Coast had any knowledge that the blades in its products had a hardness of anything other than 57 to 59 HRC before that date. Therefore, as a matter of law, Leatherman is not entitled to recover any of Coast's profits acquired prior to that time.

If a plaintiff proves that a violation of Section 43(a) of the Lanham Act has occurred, "the plaintiff shall be entitled . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). A finding that the defendant engaged in willful misconduct is not a prerequisite to an award of actual damages under Section 35(a) of the Lanham Act. *Adray v. Adry-Mart, Inc.*, 76 F.3d 984, 988 (9th Cir. 1996), *citing Lindy Pen Co. v. Bic Pen Corp.*, 982 F.2d 1400, 1407-09 (9th Cir. 1993). However, a plaintiff may recover defendant's profits, subject to the principles of equity, only if it can prove that a defendant's violation of Section 43(a) was willful.[3] *Hansen Beverage Co. v. Vital Pharmaceutical, Inc.*, 2010 U.S. Dist. LEXIS 79218, *28 (S.D. Cal. August 3, 2010)("In determining whether to award profits, the intent of the infringer is relevant."); *CollegeNET, Inc. v. XAP Corp.*, 483 F.Supp.2d 1058, 1065 (D. Or. 2007)("When the plaintiff is unable to prove damages based on any measure . . . courts in the Ninth Circuit have generally allowed a monetary award based on equitable theories of unjust enrichment and deterrence. To obtain such a recovery, the plaintiff must establish the defendant engaged in 'willful misconduct.'")(Internal citations omitted).

A defendant's false advertising constitutes a willful violation of the Lanham Act only if the defendant harbored a "deliberate intent to deceive." *Lindy Pen.*, 982 F.2d at 1406 (9th Cir. 1993). "Courts generally apply forceful labels such as 'deliberate,' 'false,' misleading,' or 'fraudulent' to conduct that meets this standard." *Lindy Pen*, 982 F.2d at 1406. In other words, willfulness requires bad faith. *Gracie v. Gracie*, 217 F.3d 1060, 1068-69 (9th Cir. 2000).

---

constructed of anything other than 440C and/or had a hardness of anything other than 57 to 59 HRC prior to February of 2010, its advertisement of its knives and multi-tools as 440C prior to that date could not have been willful.

[3] While a finding of willfulness may support an award of profits, it does not require one. *Lindy Pen*, 982 F.2d at 1406 n. 4.

Page 12 -  DEFENDANT COAST CUTLERY CO.'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

PDX/122348/182253/ATC/9012729.1

No one at Coast knew or had reason to know that any of the knives and multi-tools it advertised as being constructed of 400C stainless steel were actually constructed of another grade of steel until Mr. Opolka mentioned his suspicions to Mr. Windom at the Master Distributors Conference in February of 2010. While Mr. Opolka had voiced his doubts to Leatherman in March of 2008, for reasons that are not entirely clear from his testimony, he did not deem it necessary to so inform his business partner, Coast:

> Q: Whether or not you were under a master distributorship agreement in March or April of 2008, wouldn't it have been appropriate to report to Coast at that time that you had done a test on their knives and determined that maybe it wasn't 440C stainless steel? Wouldn't that have been appropriate to report to David Brands or someone else at Coast right away?
>
> A: That time, I reported not about our knives - - about our lamps to David Brands. And I had very, very hard and no fine fightings with David Brands about that. And a lot of what I mentioned, I received answers - - very hard answers from David brands. We had that understanding, and I didn't feel any need at that time to report the matter of the knife to David Brands.

Opolka Dep., 31:14-32:6.

Similarly, neither Nichol nor Rivera nor anyone else at Leatherman passed along Mr. Opolka's suspicions or otherwise took any action that would have informed Coast of Mr. Opolka's assertions.

Because there are no facts tending to show that Coast had knowledge of the possibility its products might be constructed of something other than 440C stainless steel or have a hardness of anything other than 57 to 59 HRC – let alone that Coast was intentionally and deliberately falsely advertising its products – Coast's motion for summary judgment with respect to willfulness should be granted.

### C. Leatherman's inability to prove willfulness prior to February of 2010 limits any recovery of Coast's profits.

Because there is no evidence of that Coast's alleged false advertising was willful prior to February of 2010, any entitlement Leatherman may have to Coast's profits is limited to profits

Page 13 - DEFENDANT COAST CUTLERY CO.'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

PDX/122348/182253/ATC/9012729.1

earned after that date.[4]  *See CollegeNet, Inc.*, 483 F.Supp.2d at 1065-66.  For example, in *Riggs Investment Management Corp. v. Columbia Partners, L.L.C.*, 966 F.Supp. 1250, 1270 (D. D.C. 1997), the court found that the defendant had operated its business willfully and in bad faith with respect to its advertising from October 2, 1995 through February 15, 1996, the date on which it first sent out correction letters relating to its false advertising.  *Id*.  However, from that date forward, the defendant was no longer acting in bad faith with respect to its advertising and therefore, the court determined it would award plaintiff defendant's profits only for the period that the false advertising violations were willful.  *Id*.  In other words, the plaintiff was not entitled to profits after defendant's actions could no longer be considered willful.  *Id*.

Similarly, in this case, there is no evidence of willfulness prior to February of 2010.  Assuming, without conceding, that Leatherman can prove Coast's alleged false advertising was willful after that date, Leatherman is only entitled to recover Coast's profits for the period for which it can actually present evidence of Coast's willfulness.  Coast is thus entitled to summary judgment limiting any recovery of Coast's profits to those earned after February of 2010.

## V.    CONCLUSION

Coast is entitled to partial summary judgment because Leatherman cannot offer evidence sufficient to create a genuine issue of material fact that (1) Coast falsely advertised any of its products prior to March of 2008, (2) Coast falsely advertised any product other that its fish filet knife prior to December of 2010; (3) Coast's alleged false advertising was willful prior to February of 2010; and (4) Leatherman is entitled to Coast's profits prior to February of 2010. For the reason set forth above, Coast's motion should be granted.

---

[4] Coast in no way concedes that any alleged false advertising was ever willful under Ninth Circuit precedent.

Page 14 -    DEFENDANT COAST CUTLERY CO.'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR  97204
Telephone 503.222.9981  Fax 503.796.2900

PDX/122348/182253/ATC/9012729.1

Dated this 2nd day of March, 2012.

          Respectfully submitted,
          SCHWABE, WILLIAMSON & WYATT, P.C.


      By: /s/ Peter E. Heuser
         Peter E. Heuser, OSB #811281
         Matthew R. Wilmot, OSB #061936
         Abra T. Cooper, OSB # 086179
         Telephone 503.222.9981

         Of Attorneys for Defendant Coast Cutlery Co.

Page 15 - DEFENDANT COAST CUTLERY CO.'S MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

SCHWABE, WILLIAMSON & WYATT, P.C.
Attorneys at Law
Pacwest Center
1211 SW 5th Ave., Suite 1900
Portland, OR 97204
Telephone 503.222.9981  Fax 503.796.2900

PDX/122348/182253/ATC/9012729.1